**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1684
_____

LOUISE BLANYAR;
LAWRENCE BUCHMAN;
EDWARD YACHERA,
Appellants

v.

GENOVA PRODUCTS INC
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 3-15-cv-01303)
District Judge:  Hon. Malachy E. Mannion
_____

Argued October 26, 2016
_____

Before: FISHER,[*] VANASKIE, and KRAUSE,
*Circuit Judges*.

(Opinion Filed: June 30 2017)

Sol H. Weiss, Esq.                    [ARGUED]
Paola Pearson, Esq.
David S. Senoff, Esq.
ANAPOL WEISS
130 North 18th Street, Suite 1600
Philadelphia, PA  19103

      *Counsel for Appellants*

Justin P. Bagdady, Esq.               [ARGUED]
James J. Walsh, Esq.
BODMAN PLC
201 South Division Street, Suite 400
Ann Arbor, MI  48104

Fredrick J. Dindoffer, Esq.
BODMAN PLC
1901 St. Antoine Street
Sixth Floor at Ford Field
Detroit, MI  48226

---

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.

2

J. Benjamin Nevius, Esq.
Ronald L. Williams, Esq.
FOX ROTHSCHILD LLP
747 Constitution Drive, Suite 100
Exton, PA  19341

  *Counsel for Appellee*

_____

OPINION

_____

VANASKIE, *Circuit Judge.*

  Appellants, former employees of Appellee Genova Products Inc. ("Genova"), challenge the District Court's decision to dismiss their putative class action for medical monitoring as barred by the applicable two year statute of limitations.  While acknowledging that their exposure to the alleged toxic substances upon which they base their medical monitoring claims ended more than two years before commencing this litigation, Appellants contend that the limitations period should have been tolled by the discovery rule and should not have begun to run until they discovered the toxicity of the substances present in the Genova workplace, a discovery they claim was first made less than two years before this action was initiated.  The District Court concluded that the discovery rule did not save Appellants' action because information concerning the dangers of the chemicals to which Appellants were exposed had been widely available for decades before they filed their complaint.  For the reasons that follow, we will affirm the dismissal of Appellants' lawsuit.

## I.

Genova manufactures vinyl pipes and rain gutters. It operated a plant in Hazleton, Pennsylvania from 1975 to 2012, employing as many as 240 workers in the late 1990s. Appellants are all former employees of the Genova Hazleton plant. Appellant Louise Blanyar last worked at the Genova Hazleton plant in 2004. Appellant Lawrence Buchman left Genova's employ in 2006. Appellant Edward Yachera terminated his employment with Genova in 1987. The putative class action includes persons who last worked at the Genova Hazleton plant in 2009. Genova ceased operations at its Hazleton facility in 2012, more than two years before Appellants commenced this litigation.

Appellants claim to have discovered previously unavailable Material Safety and Data Sheets ("MSDSs") which reveal that, while working for Genova, they were exposed to carcinogens and other toxic chemicals linked to various diseases or conditions. Appellants allege that the MSDSs show that the materials used in the manufacture of Genova's products contained toxins subject to state and federal safety disclosure laws and other regulations. According to Appellants, Genova violated these laws and regulations, including the Occupational Safety and Health Administration ("OSHA") Hazard Communication Standard, 29 C.F.R. § 1910.1200, by failing to inform them about the chemicals to which they were exposed and by failing to provide the requisite protective equipment. While none of the members of the putative class have suffered an injury or illness linked to the substances used at Genova's plant,

4

Appellants assert that they are entitled to medical monitoring because they are at increased risk of illness.[1]

Appellants' complaint identifies sixteen specific chemicals associated with increased incidences of various cancers and diseases, including both Vinyl Chloride ("VC"), a gas, and Polyvinyl Chloride ("PVC"), a powder made from VC. They state that PVC is "one of the most widely used plastic materials," and that the health hazards of both substances are "well-studied and well-documented." (App. 38 ¶ 22; 39 ¶ 28.) Appellants note that the United States Environmental Protection Agency and the World Health Organization have classified VC as a known human carcinogen and that the Center for Disease Control recognizes it as a "significant potential threat to human health." (App. 38 ¶ 25.) Appellants also cite medical literature dating back to the 1980s that shows increased incidences of several types of cancer, respiratory illness, and reproductive conditions in

---

[1] Though they have not suffered any injuries themselves, Appellants claim that, "[u]pon information and belief, a multitude of former Hazleton employees have developed chronic diseases or conditions as a result of their occupational exposure." (App. 40 ¶ 36.) Appellants stipulated, however, that their proposed class definition excludes any former Hazleton employees who have manifested diseases or conditions believed to be attributable to their occupational exposure. Appellants recognize that a medical monitoring claim may be "inapplicable to a situation where plaintiffs have already suffered compensable physical injuries." *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 464 (E.D. Pa. 2013).

workers exposed to VC and PVC. According to Appellants' complaint, OSHA set strict standards for manufacturers who work with or around VC. *See* 29 C.F.R. § 1910.1017 (2017). These standards were first set in the 1970's. *See* 39 Fed. Reg. 23,582 (June 27, 1974).

On May 15, 2015, more than two years after the Hazleton plant closed in 2012, Appellants brought this medical monitoring action in state court on behalf of themselves and all those similarly situated, including all cohabitating family members.[2] Genova removed the action to

---

[2] Under Pennsylvania law, a medical monitoring claim consists of the following elements:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 251 (3d Cir. 2010) (quoting *Redland Soccer Club, Inc. v. Dep't of the*

federal court under the Class Action Fairness Act and on the basis of diversity jurisdiction. 28 U.S.C. § 1332. The complaint alleges that Genova's negligence resulted in Appellants' occupational exposure to these toxins which has substantially increased their risk of developing serious diseases. To detect and mitigate the long term health consequences of their exposure, Appellants propose several "well-established and specialized medical monitoring procedures." (App. 41 ¶ 42.) According to Appellants, these procedures can allow for early diagnosis and treatment, and the management, mitigation, or even prevention of long term health consequences.

Genova moved to dismiss, arguing that Appellants' claims were barred by the statute of limitations.[3] Appellants

_Army & Dep't of Def. of the U.S._, 696 A.2d 137, 145–46 (Pa. 1997)).

[3] Genova also argued that Appellants failed to plead their cause of action with the specificity required by _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544 (2007), and _Ashcroft v. Iqbal_, 556 U.S. 662 (2009). According to Genova, while the complaint does contain a long list of chemicals and potential monitoring regimes, it does not adequately plead the elements of a medical monitoring claim. The District Court recognized the merits of this argument and advised Appellants to address these deficiencies should they file an amended complaint. Appellants did not file an amended complaint. Although Genova raises the argument again on appeal, we need not reach it as the statute of limitations has run on Appellants' medical monitoring claim.

did not dispute the applicable two year statute of limitations for a medical monitoring claim, but contended that the statute should be tolled under the discovery rule as they were unable to reasonably discover their cause of action within the prescribed time period.[4]  The District Court granted Genova's motion without prejudice, holding that the discovery rule did not apply because Appellants' complaint attested to the prevalence of information regarding the dangers of PVC and VC years before this lawsuit was brought. *Blanyar v. Genova Prods., Inc.*, No. 15-cv-1303, 2016 WL 740941, at *7 (M.D. Pa. Feb. 25, 2016).  Thus, the two year statute of limitations for their medical monitoring claim had passed with respect to the named plaintiffs.  Appellants timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332.  Because the employees chose to stand on their original complaint, the District Court's order is final and reviewable

---

[4] Before the District Court, Appellants had also argued that the statute of limitations should be tolled under the doctrine of fraudulent concealment.  This doctrine "provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005).  The District Court concluded that Appellants had not exercised the reasonable diligence required for fraudulent concealment to apply.  Appellants have abandoned this argument on appeal.

under 28 U.S.C. § 1291.[5] *Borelli v. City of Reading*, 532 F.2d 950, 951–52 (3d Cir. 1976). We exercise plenary review of a district court's decision to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). When considering a Rule 12(b)(6) motion, we "accept all factual allegations as true, construe the complaint in the light most

[5] As discussed further below, Appellee argues that Appellants' claims are barred by workers' compensation exclusivity. Although workers' compensation exclusivity is a threshold jurisdictional concern in state court, *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986), we join our sister circuits who have held that state substantive law cannot deprive a federal court of its diversity jurisdiction. *See Goetzke v. Ferro Corp.*, 280 F.3d 766, 778–79 (7th Cir. 2002); *Mullen v. Acad. Life Ins. Co.*, 705 F.2d 971, 975 (8th Cir. 1983); *Dominion Nat. Bank v. Olsen*, 771 F.2d 108, 116 n.2 (6th Cir. 1985); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1316 (9th Cir. 1982); *see also MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1109 (3d Cir. 1995) (Nygaard, J., concurring) ("It is axiomatic that, because federal subject matter jurisdiction can be conferred or withdrawn only by Congress, a federal court must look only to federal, not state, law to determine whether that jurisdiction exists, even when the substantive right at issue is a creature of state law."). Accordingly, we deem Appellee's assertion of workers' compensation exclusivity simply another potential ground for dismissal of Appellants' complaint on the merits under Pennsylvania law—not as a threshold jurisdictional issue for a federal court sitting in diversity.

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

## III.

Under Pennsylvania law, the statute of limitations for a medical monitoring claim is two years. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 152 (3d Cir. 1998). A medical monitoring claim accrues at the moment that an individual was "placed at a 'significantly increased risk of contracting a serious latent disease.'" *Id.* at 152 (quoting *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 696 A.2d 137, 145 (Pa. 1997)). Because Genova's Hazleton facility closed in 2012, no member of the putative class could have been exposed to any chemical as a result of Genova's alleged negligence within two years of the filing of their complaint. Appellants therefore argue that the statute was tolled because they were unable to discover the existence of their claim until they received the MSDSs.[6]

---

[6] Appellants also contend that their claims are timely under the Pennsylvania Workers Compensation Act ("WCA"), which provides the exclusive remedy for claims of occupational disease. 77 Pa. Cons. Stat. § 481 (2017). The WCA states that plaintiffs can only recover for occupational diseases that manifest "within three hundred weeks after the last date of employment." *Id.* § 411. Recently, the Pennsylvania Supreme Court held that occupational diseases which first become manifest more than 300 weeks after a last exposure did not fall within the definition of injury in the

The discovery rule "tolls the statute of limitations during the 'plaintiff's *complete inability*, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence.'" *Barnes*, 161 F.3d at 152 (quoting *Kingston Coal Co. v. Felton Mining Co.*, 690 A.2d 284, 288 (Pa. Super. Ct. 1997) (emphasis added). "[T]he statute of limitations begins to run when the 'plaintiff knows, or in the exercise of reasonable diligence should have known, (1) that he has been injured, and (2) that his injury has been caused by another's conduct.'" *Id.* (quoting *Bradley v. Ragheb*, 633 A.2d 192, 194 (Pa. Super. Ct. 1993). The application of the rule requires that the plaintiff use "*all reasonable diligence* to inform himself or herself properly of

---

WCA, and thus were not barred by WCA exclusivity. *Tooey v. AK Steel Corp.*, 81 A.3d 851, 859-64 (2013).

On appeal, Appellants argue that their claims are not time barred because *Tooey* created a previously unrecognized cause of action that, by definition, has a statute of limitations of at least 300 weeks after the last date of occupational exposure. Appellee responds that *Tooey* has no application to medical monitoring claims and, therefore, that Appellants' claim is not only time barred, but is barred by WCA exclusivity. We need not address *Tooey's* import on this case, however, as Appellants conceded before the District Court that their claims are subject to Pennsylvania's two-year statute of limitations, and Appellee did not raise WCA exclusivity in its motion to dismiss. Thus, both parties' arguments, raised for the first time on appeal, are waived. *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011).

11

the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed statutory period." *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985) (emphasis added) (citing *Schaffer v. Larzelere*, 189 A.2d 267, 269 (Pa. 1963)). "Pennsylvania's formulation of the discovery rule reflects a narrow approach 'to determining accrual for limitations purposes' and places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (quoting *Wilson v. El-Daief*, 964 A.2d 354, 364 (Pa. 2009). Ultimately, "the salient point giving rise to [the discovery rule's] application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).

In a medical monitoring case such as this one, injury occurs when the plaintiff is "placed at a significantly increased risk of contracting a serious latent disease." *Barnes*, 161 F.3d at 152 (citation omitted). Thus, for the discovery rule to apply, Appellants must not have known, and reasonably could not have discovered, the dangers of VC and PVC exposure prior to May 2013, or two years before the filing of their complaint. As the District Court noted, Appellants' own complaint recognizes the extent to which the substances they identify had been "well-studied and well-documented in medical literature from around the world." (App. 39 ¶ 28.) Many of the studies cited in the complaint date back as early as the 1980s. *See, e.g.*, S.S. Heldas, S.L. Langård, & A. Anderson, *Incidence of Cancer Among Vinyl Chloride and Polyvinyl Chloride Workers*, 41 Brit. J. of Med. 25 (1984). The complaint also references OSHA's VC

exposure regulations which have been in effect since 1974. *See* 39 Fed. Reg. 23,502, 23,589 (June 27, 1974) (now codified, as amended, at 29 C.F.R. § 1910.1017).

In *Barnes*, we held that cigarette smokers' medical monitoring claims were not saved by the discovery rule because "[e]ach plaintiff should have known that cigarettes put him or her at a significantly increased risk of contracting a serious latent disease years before [the] lawsuit was filed." 161 F.3d at 153. In *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1120 (N.D. Ill. 1998), the court held that widespread knowledge of potential health hazards from exposure to thorium tailings years before plaintiffs brought their medical monitoring claim precluded application of the discovery rule.

As in those cases, Appellants knew, or in the exercise of reasonable diligence should have known, that they worked with and were being exposed to VC and PVC. Considering the wide availability of information documenting the risks of exposure to these substances in medical literature, and VC's regulation by the federal government dating back to the 1970s, we agree with the District Court that Appellants were on inquiry notice well before May 2013 that their work at the Genova facility may have placed them at a significantly increased risk of contracting a serious latent disease. Appellants exercised no reasonable due diligence with regard to their claims, and the discovery rule therefore does not apply.

Appellants contend that the question of whether they were reasonably diligent in informing themselves of the facts and circumstances surrounding their claim should be left to

13

the jury. While Appellants correctly note that reasonableness in this context is a question of fact, a court may decide the issue as a matter of law when "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause." *Fine,* 870 A.2d at 858–59 (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Given the substantial evidence documenting the dangers of their occupational exposure to the substances used at the Genova plant, we agree with the District Court that reasonable minds would not differ in finding that the Appellants did not exercise the reasonable diligence required for the discovery rule to toll the statute of limitations. And because the statute of limitations for a medical monitoring claim has clearly run, the District Court properly dismissed Appellants' complaint.[7]

IV.

---

[7] Because none of the Appellants have alleged that they have suffered any ill health effects due to their work at the Genova Hazleton plant, they may not be foreclosed from bringing personal injury actions if they later contract diseases related to their alleged occupational exposure. *See Tooey*, 81 A.3d at 865. Although Appellants' instant claims for medical monitoring are time barred, their statute of limitations to bring personal injury actions would begin to run anew were Appellants to manifest symptoms of occupational disease three-hundred weeks after their last exposure to hazardous substances.

For the foregoing reasons we will affirm the District Court's order granting Genova's motion to dismiss.